(Supreme Court, Trial Term, Rensselaer County. February, 1897.)

1. PLEDGE—WHAT CONSTITUTES—LIFE INSURANCE POLICY.
   The delivery of a life insurance policy by the holder without a written transfer as a collateral security for a loan, though not good as an assignment, is valid as a pledge.
2. LIFE INSURANCE—PLEDGE OF POLICY—POWER OF MARRIED WOMAN.
   Laws 1879, c. 248, authorizing a woman, with her husband's written consent, to assign her interest in a policy on her husband's life, does not require the consent of the husband to enable her to pledge her interest in the policy as collateral security.

3. SAME—INTEREST IN POLICY.

A life insurance policy was payable to the wife of the insured, or if she should not survive him to their children, but, if neither the wife nor any child should survive the insured, then the insurance was payable to his personal representatives and assigns. *Held*, that the children of the insured had a contingent interest in the policy, which, in the event of surviving their father, their mother having died in his lifetime, would become absolute, unaffected by any pledge or assignment by their mother.

Action of interpleader by the Travelers' Insurance Company against Ann Healey and others.

Matthew Hale, for plaintiff.
George R. Donnan, for defendant Peterson.
George H. Mallory, for defendant Healey.
William L. Learned, for J. De Witt Peltz, guardian ad litem.

CHESTER, J.   This action has been tried once before, and resulted in a judgment that the action was properly brought; that the defendants Ann Healey, Starks A. Doty, and Carrie E. Doty had no interest in the policy sued upon; that the firm of Peterson & Packer were the holders of the policy, and entitled to the moneys payable thereunder, whenever they should elect to exercise the option thereby given to the holder to convert the policy into cash under the terms thereof.   Insurance Co. v. Healey (Sup.) 28 N. Y. Supp. 478.   An appeal was taken from this judgment to the general term, which resulted in a reversal, and the granting of a new trial.   Insurance Co. v. Healey, 86 Hun, 524, 33 N. Y. Supp. 911.   The action is one for interpleader, and to determine conflicting claims to the policy and the moneys payable thereunder.

If the question of the right to maintain the action was presented as a new proposition, I should be inclined to say that the complaint should be dismissed on the grounds that these defendants are not here claiming the same thing, and that it is not now possible to determine the rights of the parties, because the future cannot be foretold, and the court should not be called upon to adjudicate upon rights and interests which will depend upon the order in which the deaths of the several beneficiaries under the policy may occur, or upon the question of survivorship among them.   There has been some controversy on this trial as to how this question was decided upon the appeal.   One of the learned justices at the general term in his opinion (86 Hun, 535, 33 N. Y. Supp. 917) reasoned that, so long as the rights of the conflicting claimants were inchoate, an action of interpleader would not lie.   Another concurred with the learned trial justice upon the first trial that the action was properly brought.   86 Hun, 537, 33 N. Y. Supp. 918.   The third justice dissented without writing an opinion.   This dissent amounts to a concurrence with the learned trial justice on the former trial that the action was properly brought. I think, therefore, that question is removed from consideration upon the new trial.   This appears to devolve the duty upon me in the first instance to attempt to determine the rights and interests of the conflicting claimants under the policy; some, if not all, of which are subject to contingencies which may or may not happen.   The policy

was issued May 23, 1874, and by its terms the plaintiff agreed to insure the life of Alonzo H. Doty (the insured) in the sum of $2,000 for the term of his natural life, said sum to be paid to Josephine Doty (the assured), wife of said insured, within 90 days after notice of the death of the insured, "and, in case of the death of the said assured before the decease of the said insured, the said insurance shall be paid when due to their children, if any, then living, or to their guardian in trust if they be minors; but, if neither said assured nor any such child shall survive said insured, then said insurance shall be paid to his executors, administrators, or assigns." The policy also contained these conditions or clauses:

"Eighth. That this policy may be converted into cash, at the option of the holder, at any time after the expiration of fifteen years from the date thereof for the amount indorsed upon the back of this policy corresponding to the age (nearest birthday) of the insured at the time of such conversion: provided, that this policy shall have been first paid up by the payment of ten full annual premiums as herein stipulated.

"Ninth. That no assignment of this policy shall be valid unless made in writing indorsed hereon, and unless a copy of such assignment shall be given to this company within thirty days after its execution; and any claim against this company arising under this policy made by any assignee shall be subject to proof of interest."

Doty and his wife are still living. They have two children, the defendants Starks A. and Carrie E. Doty, who were both infants at the time this action was commenced. Starks A. has since arrived at the age of 21 years. Alonzo H. paid the annual premiums upon the policy for 10 years, and the stipulated period of 15 years named in the eighth condition of the policy expired on the 23d day of May, 1889. He became 47 years of age on the 9th day of September, 1891, and the value of the policy under the option clause was $740 at that time and at the time of the commencement of the action. His present age is 52, and the value under the clause is now $840. On the 13th day of April, 1884, Alonzo H. borrowed the sum of $600 of the defendant Healey, for which he and his wife Josephine gave their joint and several note to Healey, and delivered to her the policy in question as collateral security for the note, and the same has ever since remained in her possession. There was no written assignment of the policy at the time it was delivered to her. Judgment was perfected in her favor against Doty and his wife under the note for $600, above mentioned, August 6, 1890, and no part of the judgment has been paid. On August 6, 1890, Doty and his wife executed and delivered to Healey a written assignment "of all their right, title, claim, interest, and benefit" in and to the said policy, and the plaintiff received a copy of such assignment on the 7th day of April, 1890. In October, 1891, Ann Healey brought an action against the plaintiff, in which she claimed to be the holder of the policy, and "elected that the same. be converted into cash," and asked judgment against the plaintiff for $740, the then value of the policy under the option clause. Proceedings in that action have been stayed until the determination of this action. On the 29th day of October, 1886, Josephine Doty, with the consent of her husband (who united with her in the instrument), executed an assignment in which she recited an indebtedness

to Peterson & Packer of the sum of $1,130.65, and by which she assigned and transferred the said policy, and "all her right, title, and interest" therein, to Peterson & Packer. On the same day the debt referred to in the assignment was put into judgment against Josephine and Alonzo, no part of which has ever been paid; and on the 1st day of November, 1886, Peterson & Packer sent to, and the plaintiff received, a copy of the assignment. Since the former trial the defendant Packer has died, and the action has been continued in the name of the defendant Peterson, as surviving partner of Peterson & Packer. The general term decision, as I understand it, holds also that the assignment of the policy by Josephine would in no way affect the rights of the children, and that they had contingent interests in the policy, which would become vested in them if Mrs. Doty died before the maturity of the policy; and also that under the provisions of the eighth clause the policy must be deemed to be held by all the parties to whom it is payable, and the option contained in such clause can only be exercised by all the owners thereof. This must be regarded as the law of the case for the purposes of this trial, and these questions are, therefore, removed from consideration here.

The first question to be determined here, then, is as to the effect of the delivery of the policy to the defendant Healey. There has been a good deal of conflict in the evidence upon the question as to whether or not at the time Peterson & Packer received the assignment of the policy they knew of the claim of Healey with reference to it. A careful examination of the conflicting testimony leads me to the conclusion that the preponderance of testimony is in favor of Healey's contention, and that at the time they received their assignment they knew that the policy had been pledged to her as collateral security for her loan to the Dotys. I do not think, however, that the delivery of the policy to Healey amounted to an assignment of it, as she claims, but, in my opinion, it constituted a valid pledge of the policy, and created an equitable lien thereon for the amount of her note to the extent of the interest of Josephine and Alonzo in the policy. A contract of pledge need not be in writing. It depends for its validity on delivery and possession of the subject-matter, and only a special property, not the title, passes. 18 Am. & Eng. Enc. Law, 590, and cases cited. Nonnegotiable choses in action are proper subjects of pledge. Wilson v. Little, 2 N. Y. 443. A life insurance policy may be effectually pledged by delivery with or without a written assignment. Jones, Pledges, §§ 145, 147; 18 Am. & Eng. Enc. Law, 651; Bliss, Ins. §§ 325, 328; Ang. Ins. § 327; Merrill v. Insurance Co., 103 Mass. 245. The clause in the policy which prohibits the transfer of it without the consent in writing of the insurers does not apply to a deposit of it by way of pledge. Jones, Pledges, § 147; Merrill v. Insurance Co., supra; Leinkauf v. Calman, 110 N. Y. 50, 17 N. E. 389. The reason is that a pledge is not a transfer of the title nor an assignment of the policy. The legal title remains in the pledgor. The pledgee has the possession and a special property which he holds to protect his equitable lien. I think the pledge of this policy to Healey should be made effectual, and her lien enforced in equity, unless the statute stands in the way. From the time of the act of 1840 (chap-

ter 80) to that of 1879 (chapter 248), which is the last enactment on the subject, the constant tendency in legislation in this state has been in the direction of enlarging the right of wives to the use of policies on the lives of husbands for their benefit, so that the only restriction on alienation now existing is that retained in the act of 1879 requiring the written consent of the husband to an assignment by the wife of such a policy. But it is claimed that the act of 1879 stands in the way of permitting a wife to create even a special property in such a policy without the written consent of her husband. The language of that act, however, simply prevents the assignment of such policies without the written consent of her husband. So that, while the policy was not assignable, and the legal title not transferable, except by the formality provided in the statute, yet there was nothing in the statute to prevent a valid pledge; and therefore the rule referred to in the authorities above cited, that nonnegotiable choses in action, including life insurance policies, can be pledged by delivery only, applied. It should be added that neither the insurance company nor Alonzo and Josephine Doty are here questioning the rights of the defendant Healey. The company is neutral as between the parties. Doty and his wife are not parties to the action, but in their evidence given upon the trial they support the contention of the defendant Healey. And, more than that, on August 6, 1890, they both executed a written assignment to her of all their right, title, claim, interest, and benefit in the policy. While this was not a good transfer of the legal title as against the earlier assignment by Josephine to Peterson & Packer, yet for the purpose of a written ratification and assent by the husband to the pledge to Healey I think it was good, and that, if I am wrong in my conclusion that a written consent by the husband to the pledge was unnecessary, the assignment to Healey may, for the purpose of such consent, fairly be said to relate back to the time when that pledge was originally given, especially in view of the fact that Peterson & Packer had knowledge of the lien of Healey when they took their assignment. Nor do I think Peterson, as survivor of Peterson & Packer, is in a position to question the validity of Healey's lien. The knowledge of her lien by his firm at the time of the assignment to them should serve, in good conscience and equity, as an estoppel. It has been held that a creditor of a wife cannot attack an assignment by her of a policy of life insurance on the ground that it was unassignable, or improperly assigned, and that that could only be done by her or her representatives. Smillie v. Quinn, 90 N. Y. 497; Insurance Co. v. Van Campen (Sup.) 11 N. Y. Supp. 103. The principle of these cases may not go far enough to prevent a creditor who is also an earlier assignee from attacking the validity of a subsequent assignment, but I think it may well be applied to prevent an attack upon the validity of the pledge and equitable lien of Healey, with knowledge of which I think Peterson & Packer took their earlier assignment.

The next question to be considered is as to the interests of the respective parties. The policy is payable when due to Josephine in case she survives her husband, and in case of her death before his decease it is payable to their children, if any, then living, or to their

guardian in trust if they be minors; and if neither the wife nor any child survive the husband, then the insurance is payable to his executors, administrators, or assigns. The interest, therefore, which Josephine had in the policy was the right to receive the insurance in case she survived her husband, and it is this interest to which the equitable lien of Ann Healey attached. Josephine is entitled, if she survives her husband, to the surplus, if any, after paying the claims of Healey and of Peterson as survivor. The only interest of Alonzo is the right to join with others having interests in exercising the option contained in the eighth clause, unless it be to have the insurance paid to his executors, administrators, or assigns in case neither his wife nor any of his children survive him, and this interest is covered by the pledge to Healey, and has been assigned by him to her under the assignment dated April 4, 1890, the prior assignment of the policy to Peterson & Packer having been of the wife's interest in the policy by his consent and not of his interest. The interest of Peterson as surviving partner of the firm of Peterson & Packer arises under the assignment to that firm by Josephine Doty with her husband's consent, dated October 29, 1886. This was a valid assignment of the wife's interest, subject to the prior equitable lien of the defendant Healey thereon; but the assignment was as collateral security to the payment of the debt due to Peterson & Packer mentioned in the assignment, and any surplus would belong to Josephine if she survive her husband. The interest of the children, the defendants Starks A. and Carrie E. Doty, is a contingent one, and, if they survive their father, and their mother does not survive, they will be entitled to the entire avails of the policy, free of all claims of the other defendants, because their interest has not been pledged. In the event of Alonzo and Josephine having other children, and such other children surviving their father, and the mother not surviving, such other children would have an equal interest in the policy with Starks and Carrie. Walsh v. Insurance Co., 133 N. Y. 408, 31 N. E. 228. The several beneficiaries or their respective assignees or pledgees each have, in addition to the interests above mentioned, the right to join with all the other owners in exercising the option contained in the eighth clause, of converting the policy into cash; but, as decided by the general term in this case, no one of them can alone exercise it. While the plaintiff has offered to abide by any judgment that may be rendered concerning the rights of the parties herein, there is no fund now in court to be distributed in this action, as that option has only been exercised by the defendant Healey. There is, therefore, no money now payable under the policy, and will be none until that option is lawfully exercised, or until the death of Alonzo.

Taxable costs not exceeding $100 are allowed to the plaintiff, to be charged by it against the moneys payable under the policy. The guardian ad litem is allowed his taxable disbursements and taxable costs, not exceeding $50 in addition thereto, and the defendant Healey is allowed her taxable disbursements; such costs and disbursements to be paid by the plaintiff, and charged by it against the moneys payable under the policy.

Ordered accordingly.